IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CEDRIC DEWIN JENKINS,            )
                                 )
        Petitioner,               )
                                 )   1:16CV635
        v.                        )   1:13CR487-2
                                 )
UNITED STATES OF AMERICA,        )
                                 )
        Respondent.               )

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner Cedric Dewin Jenkins has brought a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docket Entry 221.) Petitioner pled guilty in July of 2014 to count one of a superseding indictment charging conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. (Docket Entries 85 and 118, Minute Entry 7/11/2014.) He was sentenced in February of 2015 to 160 months of imprisonment. (Docket Entry 176; Minute Entry 1/15/2015.) Petitioner's appeal was unsuccessful. *See United States v. Jenkins*, 631 F. App'x 171 (4th Cir. 2016).[1] Petitioner filed the instant motion on June 10, 2016 along

---

[1] In pertinent part, the Fourth Circuit concluded that:

> The record reveals no clear error by the district court in applying a two-level enhancement for leadership, pursuant to *U.S. Sentencing Guidelines Manual* § 3B1.1(c) (U.S. Sentencing Comm'n 2013), and a two-level enhancement for obstruction of justice, pursuant to USSG § 3C1.1. *See United States v. Andrews*, 808 F.3d 964, 967–69 (4th Cir.2015) (stating standard of review of § 3C1.1 enhancement); *United States v. Steffen*, 741 F.3d 411, 414 (4th Cir.2013) (stating standard of review of § 3B1.1(c) enhancement). Nor did the district court plainly

with a supporting memorandum. (Docket entries 221 and 222.) The Government filed a response (Docket Entry 236) and Petitioner filed a reply (Docket Entry 238). The matter is now before the Court for a ruling. *See* Rule 8, Rules Governing Section § 2255 Proceedings.

## Petitioner's Grounds

Petitioner's § 2255 motion raises two grounds for relief. Petitioner's first ground for relief asserts ineffective assistance of sentencing counsel. (Docket Entry 222 at 4.) Petitioner's second ground for relief alleges ineffective assistance of appellate counsel. (*Id.* at 8.) For the following reasons, both these grounds lack merit.

## Discussion

To prove ineffective assistance of counsel generally, a petitioner must establish: (1) that his attorney's performance fell below a reasonable standard for defense attorneys, and (2) that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). With respect to the first prong, the petitioner bears the burden of affirmatively showing that his counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688-89; *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). Claims of ineffective assistance of counsel on appeal are also judged using the *Strickland* test. *See Lawrence v. Branker*, 517 F.3d 700, 708-09 (4th Cir. 2008). Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 752-53 (1983); *see also Evans v. Thompson*,

---

err in applying a four-level enhancement for the number of victims in
the conspiracy, pursuant to USSG § 2B1.1(b)(2)(B) (2013).

*United States v. Jenkins*, 631 F. App'x 171, 172 (4th Cir. 2016). As demonstrated below, the undersigned agrees with the Fourth Circuit that the guideline enhancements in question here were applicable.

2

881 F.2d 117, 124 (4th Cir. 1989). Ineffective assistance of appellate counsel can be shown by demonstrating that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Bell v. Jarvis*, 236 F.3d 149, 180 (4th Cir. 2000) (citation omitted).

## Ground One

Petitioner first asserts that "[c]ounsel was ineffective for not objecting to the four-level enhancement for number of victims pursuant to § 2B1.1(b)(2)(B) (2013)." (Docket Entry 222 at 4.) The 2013 edition of U.S.S.G. § 2B1.1(b)(2)(B) requires a four-level increase in the offense level if the offense "involved 50 or more victims." U.S.S.G. § 2B1.1(b)(2)(B) (2013). Petitioner claims sentencing counsel was ineffective for not objecting to this increase on the ground that only 47 victims were listed in the presentence report. (Docket Entry 222 at 5.) A "victim" under § 2B1.1(b)(2)(B) is defined to include "any person who sustained any part of the actual loss." U.S.S.G. § 2B1.1 cmt. n. 1. An "actual loss" is defined to mean "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, comment. n. 3 (A)(i). "Pecuniary harm" includes "harm that is monetary or that otherwise is readily measurable in money" and does not include "non-economic harm." U.S.S.G. § 2B1.1 comment. n. 3(A)(iii).

Here, although the presentence report listed 47 banks and individuals incurring specific dollar losses as a result of the conspiracy, it confirms that: "Some of the victims who had their identification stolen only became a victim of the break in and their identifications were never used in the bank frauds." (Docket Entry 143, PSR ¶¶ 27, 55.) Thus, there were additional individuals whose stolen identifications were never used who nevertheless incurred expenses

3

as a result of spending "numerous hours canceling accounts, getting their vehicles fixed [after the defendants broke windows to steal purses and other items], getting duplicate cards, driver's licenses, etc. Many of the victims had to take time off work to get items replaced and to ensure the safety of their identity." (*Id.* ¶¶ 27, 73.)

When Petitioner and his co-conspirators stole forms of identification from individuals that were never used successfully in defrauding banks, those victims still suffered financial injury. The list of 47 victims in the presentence report represents only those occasions where stolen documents were successfully used, and the presentence report notes that "[b]ased on the number of victims that were involved in the conspiracy, Declaration of Victim Losses statements were not sent out by the probation office." (*Id.* at ¶¶ 55, 73.) One co-conspirator admitted to law enforcement officers that some of the stolen forms of identification were used, "some were not," and that other forms were destroyed to eliminate incriminating evidence. (*Id.* at ¶ 23.) As an example, after Jenkins was arrested on March 20, 2013, in Granville County at a rest stop, a small package wrapped in Saran Wrap was found containing identification for four other individuals. (*Id.* at ¶ 49.) When co-conspirator Vickie Brantley's hotel room was searched, she had stolen identification documents for eight individuals and admitted some of these documents had not been used. (*Id.* at ¶ 23.) Co-conspirator Elizabeth Wolford led law enforcement officers to a wooded area where Petitioner had hidden stolen identification for 25 individuals. (*Id.* at ¶ 42). There was more than sufficient evidence for the district court to find that the conspiracy had 50 or more victims and, so, sentencing counsel did not err in failing to raise this issue at sentencing.

4

Case 1:13-cr-00487-LCB    Document 255    Filed 06/15/18    Page 4 of 7

Petitioner also alleges in Ground One that sentencing counsel was ineffective for failing to object to the two-level increase under U.S.S.G. § 2B1.1(b)(10)(A) as a result of having "relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement." (Docket Entry 222 at 5; U.S.S.G. § 2B1.1(b)(10)(A).) This argument is unpersuasive. When interviewed, Vickie Brantley stated that she went to Tennessee, South Carolina, North Carolina, and Texas to cash checks with various co-conspirators, and that on each occasion, "the group stayed in town for one to two weeks until it got 'hot'." (Docket Entry 143, ¶ 24.) When cashing checks with stolen identification, members of the conspiracy "used rental vehicles and obstructed the license plate to avoid detection." (*Id.* at ¶ 17.) They also "switched vehicles so as to avoid law enforcement if the bank reported any suspicious activity." (*Id.* at ¶ 25.) Elizabeth Wolford confirmed that the ring operated "in numerous states to include North Carolina, South Carolina, Georgia, Tennessee, Virginia, West Virginia, Maryland, and Oklahoma." (*Id.* at ¶ 44.) All this warranted the enhancement that Petitioner now contests and there was no reason for sentencing counsel to raise this issue at sentencing. *See, e.g., United States v. Paredes*, 461 F.3d 1190, 1192 (10th Cir. 2006) (determining that the scheme relocated "to evade law enforcement" where fraudulently obtained goods "moved from Utah to Idaho because Utah became 'hot' after one of the [participants] was arrested"). Ground One of Petitioner's motion is without merit.

## Ground Two

Petitioner next alleges appellate counsel was ineffective on appeal for not arguing that the district court erred by imposing a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c). (Docket Entry 222 at 8-11 referencing Docket Entry 194 at 43.) That provision provides for

a two-level enhancement when a defendant is "an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)." U.S.S.G. § 3B1.1(c). The application notes to this section specify that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, comment. n. 2. A "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. n. 1. Under § 3B1.1(c), "[l]eadership over only one other participant is sufficient as long as there is some control exercised." *United States v. Rashwan*, 328 F. 3d 160, 166 (4th Cir. 2003). *See United States v. Kincaid*, 964 F. 2d 325, 329 (4th Cir. 1992) (affirming § 3B1.1(c) enhancement where defendant gave co-conspirator instructions on selling narcotics).

When interviewed by law enforcement officers, Elizabeth Wolford estimated that she had cashed approximately $500,000 in fraudulent checks in various cities in North and South Carolina at the request of Petitioner and three other co-conspirators. (Docket Entry 143, PSR ¶ 44). In her testimony during Petitioner's sentencing hearing, Wolford stated that she received stolen checks, drivers licenses and other forms of identification from Petitioner and returned them to him along with any proceeds received after negotiating the checks. (Docket Entry 194 at 8-9.) She generally received about ten percent of the proceeds as her fee, but would negotiate the actual amount with Petitioner. (*Id.* at 9.) When the principal coconspirator, Jermain Jenkins, was not present, Petitioner would select the bank for Wolford to approach in order to use the stolen identification and checks. (*Id.* at 19.) Wolford never selected victim banks herself. (*Id.*) Petitioner had a police scanner on an iPad, and when Wolford was attempting to pass stolen checks, he would stay in contact with her by cellphone and warn her

6

if the bank had contacted the police. (*Id.* at 9.) The undersigned agrees that Petitioner acted as a supervisor to Wolford, and that the two-level enhancement imposed by the district court under § 3B1.1(c) was supported by the record. Consequently, appellate counsel was not ineffective for failing to pursue this issue on appeal.

## Conclusion

For the reasons set forth above, Petitioner's § 2255 motion should be denied. An evidentiary hearing is not warranted in this matter, nor is the appointment of counsel or discovery.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence (Docket Entry 221) be dismissed, and that this action be dismissed.

June 15, 2018

Joe L. Webster
United States Magistrate Judge